IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RICHARD DUTCHER,<br><br>                Plaintiff,<br>v.<br><br>BOLD FILMS LP, BOLD FILM PRODUCTIONS, LLC, OPEN ROAD FILMS, LLC, NBCUNIVERSAL MEDIA, LLC, and UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-110-DB<br><br>District Judge Dee Benson |

On February 15, 2019, Defendants filed a Motion in Limine to Preclude Testimony or Other Evidence Re: Substantial Similarity as to Non-Protected Elements of *Falling*. (Dkt. No. 295.) The court held a hearing on the motion on March 19, 2019. (Dkt. Nos. 343, 346.) At the hearing, Plaintiff was represented by Steven Silverman and Perry Clegg, and Defendants were represented by Jeffrey Hunt, David Reymann, Cheylynn Hayman, and Jeremy Brodis. Following oral argument, the court took the Motion under advisement. (Dkt. No. 343.)

On March 22, 2019, the court granted Defendants' Motion in Limine to filter out the unprotected elements of *Falling*, such that the "substantial similarity" analysis is "between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012); *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996). Having engaged in that analysis, the court determined that no reasonable jury could find that *Falling* is substantially similar to *Nightcrawler*, after the unprotected elements of *Falling* have been properly removed from

consideration. Accordingly, the court reconsidered its previous ruling, granted summary judgment in favor of Defendants, and vacated the trial date set in this matter.

The court did not provide complete analysis at that time, and instead stated that a Memorandum Decision would follow the Order. Plaintiff then submitted a Motion to Vacate Order Granting Summary Judgment and Request for Rule 56(f) Relief. (Dkt. Nos. 349.) The court denied the Motion to Vacate, but allowed the parties to submit supplemental briefing related to the protectable elements of *Falling* and substantial similarity. (Dkt. No. 353.) The court now issues this Memorandum Decision consistent with the March 22 Order. (Dkt. No. 347.)

Background

*Falling* is a motion picture made by Richard Dutcher in 2007. (First Amended Complaint, Dkt. No. 87, ¶ 1.) *Falling* depicts a freelance news videographer in Los Angeles, sometimes referred to as a "stringer". (*Id.*) The main character, Eric, drives the streets of Los Angeles listening to police band radio for fires, accidents and crimes to record and sell. (*Id.*) Eric records progressively more violent and distressing scenes throughout the film until he eventually records a crime in progress that results in a murder in which he continues to record a dying man without rendering assistance. (*Id.*) Mr. Dutcher screened the movie in Los Angeles and Salt Lake City, and distributed a small number of DVDs. (*Id.*) Mr. Dutcher holds a registered copyright for the *Falling* motion picture. (*Id*. ¶ 6.)

*Nightcrawler* is a motion picture produced and distributed by Defendants in 2014. (*Id.* ¶¶ 1, 8-10.) *Nightcrawler* also depicts a stringer in Los Angeles who uses police scanners and

searches the streets for crimes to record and sell. The main character, Lou, similarly records progressively more violent crimes, including filming a murder and failing to aid the victim.

Both films involve main characters who are engaged in the stringer profession in Los Angeles. Both films include a male protagonist and a female love interest. In *Falling*, the love interest, Davey, is Eric's wife, an aspiring actress. In *Nightcrawler*, the love interest, Nina, is a reporter dependent on Lou's continued submission of his sensational footage to her. At the end of *Nightcrawler*, Lou ends up better off than when the film began, with new vans and several interns. At the end of *Falling*, Eric appears to have lost everything as a result of his stringer behaviors.

## Discussion

To prevail on a copyright claim, the owner of a valid copyright must prove "that the defendant unlawfully appropriated protected portions of the copyrighted work." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993). "This question involves two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's [protected work]; and 2) whether, as a mixed issue of fact and law, those elements of the [protected work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable. *Id.* The second inquiry requires the court "to determine which elements of Plaintiff's work … are protectable." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).

In the absence of direct evidence, a plaintiff may prove that protectable elements of his copyrighted work have been copied by showing that the defendant had access to the protected work and that the allegedly copied material is substantially similar to the protectable portion of

the copyrighted material. *Id.* at 832; *Country Kids*, 77 F.3d at 1284. "Liability for copyright infringement will only attach where *protected elements* of a copyrighted work are copied." *Gates Rubber Co.*, 9 F.3d at 833.

Courts in the Tenth Circuit often find it useful to apply the "abstraction-filtration-comparison" test. *See id.* at 834-42; *Country Kids*, 77 F.3d at 1284-1288; *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1490-98 (10th Cir. 1993) (overruled on other grounds). The abstraction step requires the court to "separate the ideas…, which are not protectable, from the particular expression of the work." *Country Kids,* 77 F.3d at 1284. The court then "filter[s] out the nonprotectable components of the [copyrighted work] from the original expression." *Id.* Finally, the court "compare[s] the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar." *Id.*

The court here has been presented with Defendants' Motion in Limine to Preclude Testimony or Other Evidence Re: Substantial Similarity as to Non-Protected Elements of *Falling*. (Dkt. No. 295.) That Motion requested that the court filter out the non-protected elements of *Falling* prior to the case being presented to the jury for comparison to *Nightcrawler*. The court agreed with Defendants that the "substantial similarity" analysis must be "between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012); *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).

*Abstraction and Filtration*

The court must "eliminate . . . the unprotectable elements of ideas, processes, facts, public domain information, merger material, *scenes a faire* material, and other unprotectable

4

elements" prior to engaging in a substantial similarity analysis. *Gates Rubber Co. v. Bando Chemical Indus.*, 9 F.3d 823, 833-34 (10th Cir. 1993). Most significantly here, the court must exclude from consideration elements that are "standard, stock, or common" to the stringer profession, including material that "necessarily follows" from that theme and setting. *Autoskill*, 994 F.2d at 1494 (internal citations omitted).

*Falling* is not the first work to portray stringers in action. The court reviewed the contents of previous works submitted by Defendants, the "Prior Stringer Films." (Dkt. No. 129.) Those prior works contained all of the significant stringer themes that Plaintiff claims are independent creations in *Falling*.

First, the similarities between the characters in *Falling* and *Nightcrawler* are due to their profession as stringers. Both work as freelance videographers driving around Los Angeles, listening to police scanners, and rushing to crime scenes for graphic and sensational footage to sell to news stations. However, those similarities are also found in the stringer characters in the Prior Stringer Films and are consistent with the idea of the stringer profession generally. As such, they are *scenes a faire* properly excluded from the substantial similarity analysis.

Second, the similarities of the plot and plot sequence between *Falling* and *Nightcrawler* are also attributable to *scenes a faire* of the stringer profession. The Prior Stringer Films show characters driving the streets listening to police scanners, obtaining progressively more graphic footage, and stringers drawn into dangerous situations. Absent those similarities, the plots of *Nightcrawler* and *Falling* are quite different. *Falling* maintains a moral focus, including an extensive exploration of Eric's home life and wife. *Nightcrawler* focuses on an amoral character that seems to place little value on the lives of those close to him. The endings are also very

different, with Eric ending up losing everything due to his stringer behaviors in Falling, while Lou seems to come away better following all of his devious stringer activities.

Similarly, the murder scenes in *Falling* and *Nightcrawler* are alike in that both men engage in the stringer profession and fail to aid dying victims. However, this type of behavior is also seen in the Prior Stringer Films, and is consistent with the general concept of the stringer profession—to obtain graphic footage to sell to news stations. Otherwise, the murder scenes have different settings, major differences in characters, and contribute differently to the overall plot.

Finally, the cliché journalism phrases identified by Plaintiff and depictions of the Los Angeles LDS temple in *Falling* are not protectable expression. Plaintiff argues that language used in both films—such as the phrase "if it bleeds, it leads," and the viewer discretion warnings given by newscasters prior to showing gruesome footage—are protected aspects of *Falling* that were copied in *Nightcrawler.* Those phrases convey an idea "that is typically expressed in a limited number of stereotypical fashions [and as such] are not subject to copyright protection." *Lumos, Inc. v LifeStrength, LLC,* 2014 WL 4355451 (D. Utah Sept. 3, 2014) (citation omitted). As such, those phrases, while similar in both films, are properly excluded from the substantial similarity analysis.

Similarly, use of the Los Angeles LDS temple in a scene of *Falling* is not protectable expression. The Los Angeles LDS temple is a "real plac[e] known to the public." *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986). Accordingly, its inclusion in a film based in Los Angeles cannot be copyrightable. *Id.* Thus, the short clip of the Los Angeles LDS temple in *Nightcrawler* cannot properly be considered in the substantial similarity analysis.

*Comparison*

"The traditional test for substantial similarity is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Country Kids*, 77 F.3d at 1288 (citation omitted). To apply this test, the court asks whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* (citing *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960)).

Absent unprotected material, particularly the *scenes a faire* that are consistently found in the Prior Stringer Films, no reasonably jury could find that *Nightcrawler* is substantially similar to *Falling*. The protagonists are very different characters—Eric is a generally moral character who demonstrates significant remorse for his stringer behaviors; Lou is a generally amoral character who does not seem to feel remorse for his actions. The female leads are very different and maintain very different relationships with the male protagonists—Davey is Eric's wife, who he appears to love and care for deeply; Nina is Lou's business contact, who he manipulates to gain greater personal and professional advantage.

Furthermore, the plot and overall theme of the movies are not substantially similar. *Falling* has heavy religious overtones and includes a main character who is struggling with his identity as a stringer. *Nightcrawler* does not involve religion or morality in the same way but rather focuses on an amoral character who is not developing or changing morally throughout the film.

The murder scenes are also not substantially similar. In *Falling*, Eric happens upon a gang mugging during the day on the street and tapes the man assaulted rather than attempting to assist him. In *Nightcrawler*, Lou unlawfully enters the private residence of a crime victim and tapes one of the victims as he dies. In another *Nightcrawler* scene, Lou intentionally places his intern in danger, causing him to be shot by police. Neither of the murder scenes in *Nightcrawler* is substantially similar to the scene in *Falling*.

An ordinary observer would not view *Falling* and *Nightcrawler* and determine that "their aesthetic appeal [is] the same" or that *Nightcrawler* must have "unlawfully appropriated … material of substance and value" from *Falling*. Instead, the significant similarities between the films are properly excluded from consideration, because they are consistently found in Prior Stringer Works. Accordingly, *Nightcrawler* is not substantially similar to *Falling* under the reasonable observer standard.

Having engaged in a substantial similarity analysis that properly excludes unprotected material, as required by Tenth Circuit precedent, the court reconsiders its previous denial of Defendants' Motion for Summary Judgment (Dkt. No. 239) and finds that no reasonable fact-finder could determine that *Nightcrawler* is substantially similar to the protectable elements of *Falling*. Thus, even if Plaintiff were able to establish access, Plaintiff cannot show copying, and, as such, judgment as a matter of law in Defendants' favor is appropriate.

Conclusion

For the foregoing reasons, the court grants Defendants' Motion in Limine to Preclude Testimony or Other Evidence Re: Substantial Similarity as to Non-Protected Elements of *Falling* (Dkt. No. 295) and reconsiders its previous denial of summary judgment based on substantial similarity. Summary judgment is hereby GRANTED in favor of Defendants.

DATED this 19th day of August, 2019.

BY THE COURT:

_____
Dee Benson
United States District Judge